IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| THE ESTATE OF DEENA J. GLAVES and ANDREA TATOM, as Representative of the Heirs of Deena J. Glaves,<br><br>Plaintiffs,<br><br>v.<br><br>THE MAPLETON ANDOVER LLC,<br><br>Defendant. | Case No. 21-1037-DDC |

**MEMORANDUM AND ORDER**

This matter comes before the court on the Motion for Order of Apportionment and Disbursement (Doc. 106) filed by plaintiff Andrea Tatom.[1] As the Kansas Wrongful Death Act requires, the court conducted a settlement hearing via Zoom video conference on August 14, 2023. Plaintiff and her attorney, Randall Rathbun, appeared virtually. Alexander Mitchell, II also appeared virtually as plaintiff's counsel. Defendant, the Mapleton Andover LLC, appeared virtually by its attorney, Matthew Spahn. No other person appeared. For reasons explained below, the court grants the Motion to Apportion the Settlement.

**I.      Findings of Fact**

The court, after reviewing the parties' submissions and hearing the testimony presented at the hearing and after due consideration, finds as follows:

1.      This action was brought by Andrea Tatom, on behalf of herself and her three brothers (Melvin Glaves, Harley Glaves, and Shawn Glaves), constituting all the heirs of Deena

---

[1] While the case caption lists multiple entities as plaintiffs, Andrea Tatom appears on behalf of both Deena Glaves's estate and Deena Glaves's heirs, so this Order refers to plaintiff in the singular.

Glaves and as the Administrator of the Estate of Deena Glaves.  Plaintiff is one of four surviving heirs-at-law of Ms. Glaves, decedent.  She is Ms. Glaves's daughter and served as the decedent's sole caretaker, legal guardian, and conservator.

2. In this action, plaintiff seeks damages for wrongful death and survivors' action in connection with the alleged rape of decedent Deena Glaves by one of defendant's certified nursing assistants at some unknown time while Ms. Glaves was a resident at Mapleton, defendant's nursing facility.

3. Decedent died on August 25, 2020, and plaintiff brought a cause of action for wrongful death under Kan. Stat. Ann. §§ 60-1901–06.

4. Plaintiff, through counsel, investigated the facts and circumstances of the alleged occurrence, decedent's death, and the potential elements of damages set out in Kan. Stat. Ann. § 60-1904.

5. Defendant denies any liability to plaintiff, but it negotiated a settlement with plaintiff on behalf of persons entitled to sue under Kan. Stat. Ann. § 60-1902.  This proposed settlement, if approved, would provide defendant a full and complete release from liability and settle all claims against defendant for injuries and death of the decedent under the terms of the release document presented to the court at the hearing.

6. The proposed settlement is conditioned upon the court approving the apportionment of the proposed settlement to all persons entitled to receive a distribution under the Kansas wrongful death statute.

7. Plaintiff is decedent's daughter and one of four surviving heirs-at-law.  Decedent has three other children who are heirs with a potential interest under Kan. Stat. Ann. § 60-1905: Melvin Glaves, Harley Glaves, and Shawn Glaves.  Plaintiff established that she had provided

each brother notice of the settlement and notice of the settlement hearing, as required in Kan. Stat. Ann. § 60-1905.  *See* Doc. 106-1 (Ex. 1).  This notice invited each brother to attend and participate in the hearing.  *See id.*

8. Under Kan. Stat. Ann. § 60-1902, plaintiff may maintain this action on behalf of herself and all other heirs-at-law of decedent.

9. Plaintiff employed Randall Rathbun of Depew, Gillen, Rathbun and McInteer, LC as her counsel and representative to prosecute this case.  Mr. Rathbun has investigated both the law and facts of this case thoroughly and advised plaintiff whether she should settle the action against defendant for a confidential amount.

10. Plaintiff's attorney entered into an agreement with plaintiff and this agreement entitled counsel to attorneys' fees in a specified proportion plus expenses.  At the hearing and in plaintiff's motion papers, counsel asked the court to approve the amount of his fee recovery.

11. Plaintiff testified that she believed that the proposed settlement with defendant is fair and reasonable considering all the facts and circumstances, and that the court's approval will serve her best interests.

12. Plaintiff also testified that she understands the settlement, if approved, would constitute full satisfaction of all claims against defendant.  She requested that the court approve the agreed upon attorneys' fees and case expenses to her attorney and apportion the recovery, all as required by Kan. Stat. Ann. § 60-1905.

13. At the August 14, 2023, settlement apportionment hearing, the parties asked the court to approve plaintiff's attorneys' fees and costs and apportion the settlement proceeds to Andrea Tatom after deducting costs and reasonable attorneys' fees.  Specifically, plaintiff asked the court to apportion the gross settlement amount as follows:  (1) 4.9% to costs associated with

this action; (2) 33.2% to plaintiff's attorneys' fees; and (3) 61.8% to Ms. Glaves's heirs.  And, plaintiff asked the court to apportion the 61.8% of the settlement proceeds for Ms. Glaves's heirs as follows:  (1) 100% to Andrea Tatom as a surviving heir (or 61.8% of the total settlement), and (2) each of Ms. Glaves's sons will receive no part of the heir apportionment.[2]

After considering the parties' submissions, the testimony given at the settlement hearing, and counsel's comments, the court is prepared to rule on costs, attorneys' fees, and the proper apportionment of the wrongful death settlement.  But, before it reaches the merits, the court addresses defendant's Motion to Seal (Doc. 108).

## II. Motion to Seal

Defendant filed a Motion to Seal or Redact (Doc. 108) four documents:  Docs. 106, 106-1, 106-2, and 106-3.  *See* Doc. 108 at 2.  Documents 106-1–3 are also Exs. 1-3.  For reasons explained below, the court partially grants and partially denies defendant's motion without

---

[2] The court has intentionally omitted references to the settlement amounts in this Order because the parties' settlement agreement includes a confidentiality clause.  During the August 14, 2023 hearing, the court heard the parties' arguments for keeping the settlement figures confidential and finds that the interest in preserving the actual amount of their confidential settlement negotiations outweighs the public interest in accessing the settlement amounts.  *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–98 (1978) (explaining that while the public has a "general right to inspect and copy public records and documents," the right is not absolute).

Specifically, counsel for defendant explained that his client valued a confidentiality provision governing the settlement.  Counsel explained that the confidentiality provision was material to his client's decision to settle this contested case and that nullifying the provision would subvert the parties' agreement.  The courts long have recognized a public interest supporting private efforts to resolve litigation.  This interest does not conflict with other public interests identified by Kansas and federal law.  In the Kansas Wrongful Death Act, the Kansas Legislature recognized a public policy interest in court approval of specified aspects of lawsuits brought under that Act.  As this Order discusses, the Kansas Wrongful Death Act requires court approval of how a settlement *apportions* the settlement's proceeds among a decedent's heirs.  *See* Kan. Stat. Ann. § 60-1905.  But the Act does not require court approval of the settlement *amount*.  *Cf. Adams v. Christi Reg'l Med. Ctr.*, 19 P.3d 132, 137–39 (Kan. 2001) (explaining Kan. Stat. Ann. § 60-1903's requirement for a court or jury "to award fair and just damages" is "associated with trials and verdicts" but not settlements).  Given the legislature's expression of the public interest, the court concludes that the public's interest in the actual amount of the parties' agreement does not outweigh the interest that the parties assigned to resolving disputed litigation on a confidential basis.

4

prejudice. Defendant's Notice of Proposed Sealed Record and Motion to Seal or Redact comply with Local Rule 5.4.2. D. Kan. Rule 5.4.2; Docs. 107–08.

### A. Legal Standard

The Supreme Court recognizes a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (citations omitted). This right is based on "the citizen's desire to keep a watchful eye on the workings of public agencies," *id.* at 598, and it helps "preserv[e] the integrity of the law enforcement and judicial processes." *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985). As a result, "there is a 'strong presumption in favor of public access.'" *United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013) (quoting *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007)). This "strong presumption" is heightened when the information subject to a request to seal or redact provides the basis for a court's decision on the merits of the litigation. *Id.*

"The right of public access to judicial records, however, is 'not absolute' as '[e]very court has supervisory power over its own records and files[.]'" *United States v. Walker*, 761 F. App'x 822, 835 (10th Cir. 2019) (quoting *Nixon*, 435 U.S. at 598). The party seeking to deny access must shoulder the burden to establish that sufficiently significant interests "'heavily outweigh the public interests in access.'" *Mann*, 477 F.3d at 1149 (quoting *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). And, "any denial of public access to the record must be 'narrowly tailored to serve th[e] interest' being protected by sealing or restricting access to the records." *Walker*, 761 F. App'x at 835 (emphasis omitted) (quoting *Press-Enter. Co. v. Superior Ct. of Cal. For Cnty. of Riverside*, 478 U.S. 1, 13–14 (1986)).

B.     Analysis

Here, defendant seeks to seal four documents: Docs. 106, 106-1, 106-2, and 106-3. Doc. 108 at 2. Defendant asserts that these documents contain information that the parties agreed to keep confidential as part of the settlement agreement. *Id.* at 3. Defendant argues that its decision to settle necessarily hinged on the confidentiality provision's inclusion in the agreement. "Without it, there would be no settlement." *Id.*

By itself, one party designating documents as "confidential" under a settlement agreement does not suffice to rebut the "strong presumption" favoring public access for court records. *Pickard*, 733 F.3d at 1302. This is especially true when, as here, a settlement agreement has used the term "confidential" to mean something less demanding than the test for the significant interests that "heavily outweigh the public interests in access." *Mann*, 477 F.3d at 1149 (citation and internal quotation marks omitted). Defendant's Motion to Seal requests exactly that. It would permit the parties to designate documents as confidential based solely upon whether the parties agreed to the designation in settlement negotiations. That showing— were it the rationale for designating the exhibits as "confidential"— would not justify sealing.

The court has reviewed the materials defendant requests to file under seal or redact. Defendant's request to redact the raw settlement dollar amount, and any fraction thereof, whenever mentioned in each document is narrowly tailored. Defendant has shouldered its burden to establish that a significantly sufficient interest outweighs the presumption of public access to judicial records for those materials. *See supra* n.2. The court grants defendant's request to redact the settlement amount.

But defendant's request to seal or redact information about the existence of the settlement itself, the plaintiff's expenses, or records of plaintiff's counsel fails to rebut the "strong

6

presumption" favoring public access for court records. *Pickard*, 733 F.3d at 1302. The settlement stems from the provision of the Kansas Wrongful Death Act, so the court must approve attorneys' fees, expenses, and recovery apportionment. Kan. Stat. Ann. § 60-1905. This case presents an even higher presumption in favor of public access because costs and attorneys' fees provide a basis for the court to adjudicate the merits of the litigation. Defendant's motion also heavily relies on the documents' status as "confidential" under the settlement negotiations. And, while the court can imagine arguments that might justify a sealing order, the court can't substitute its imagination for the showing required by controlling precedent. The court thus declines to seal or redact information about the existence of the settlement itself, plaintiff's expenses, and records of plaintiff's counsel because defendant has not articulated why it has an extraordinary interest in these documents' confidentiality.

### III.     Wrongful Death Act

The court now turns to the merits of the party's settlement, including costs, attorneys' fees, and proper apportionment of the wrongful death settlement.

#### A.     Legal Standard

As a federal court sitting in diversity, the court "appl[ies] the substantive law of the forum state, Kansas." *Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*, 636 F.3d 1300, 1302 (10th Cir. 2011). As already noted, plaintiff brings this action under the Kansas Wrongful Death Act. That Act requires the court to apportion the recovery in a Kansas Wrongful Death Act case after conducting a hearing. Kan. Stat. Ann. § 60-1905. Also, it provides that the court, first, should allow costs and reasonable attorneys' fees for plaintiff's counsel. *Id.* The act then directs the court to apportion the recovery among the heirs in proportion to the loss sustained by each one. *Id.*; *see also Flowers v. Marshall*, 494 P.2d 1184,

1187 (Kan. 1972) (explaining that the statute "provides for an apportionment among the heirs of any amount recovered to be made by the trial court according to the loss sustained by each"). The full text of Kan. Stat. Ann. § 60-1905 provides:

> The net amount recovered in any such action, after the allowance by the judge of costs and reasonable attorneys fees to the attorneys for the plaintiffs, in accordance with the services performed by each if there be more than one, shall be apportioned by the judge upon a hearing, with reasonable notice to all of the known heirs having an interest therein, such notice to be given in such manner as the judge shall direct. The apportionment shall be in proportion to the loss sustained by each of the heirs, and all heirs known to have sustained a loss shall share in such apportionment regardless of whether they joined or intervened in the action; but in the absence of fraud, no person who failed to join or intervene in the action may claim any error in such apportionment after the order shall have been entered and the funds distributed pursuant thereto.

The Kansas Wrongful Death Act allows recovery of damages for the following kinds of loss:  (1) mental anguish, suffering, or bereavement; (2) loss of society, companionship, comfort, or protection; (3) loss of marital care, attention, advice, or counsel; (4) loss of filial care or attention; (5) loss of parental care, training, guidance, or education; and (6) reasonable funeral expenses for the deceased.  Kan. Stat. Ann. § 60-1904.  The statute thus allows the court to apportion both pecuniary and non-pecuniary losses. *Turman v. Ameritruck Refrigerated Transp., Inc.*, 125 F. Supp. 2d 444, 450–55 (D. Kan. 2000); *see also* Kan. Stat. Ann. § 60-1903 (describing damages the court or jury may award in a wrongful death action).  Pecuniary damages are those that "'can be estimated in and compensated by money.'" *Turman*, 125 F. Supp. 2d at 453 (quoting *McCart v. Muir*, 641 P.2d 384, 391 (Kan. 1982)).  Pecuniary damages in a wrongful death action "'should be equivalent to those pecuniary benefits or compensation that reasonably could have resulted from the continued life of the deceased.'" *Id.* (quoting *McCart*, 641 P.2d at 391).  In Kansas, pecuniary damages "include losses of such things as marital or parental care, services, training, advice, and financial support." *Id.*  Non-pecuniary

damages, on the other hand, are generally intangible and may include compensation for "'mental anguish, bereavement, loss of society, and loss of companionship.'" *Id.* at 451 (quoting *McCart*, 641 P.2d at 391). "The Kansas Supreme Court has recognized that 'while these [intangible damages] are nebulous and impossible to equate satisfactorily with money, they nonetheless are very real and onerous to a bereaved [family member], often far outweighing in severity and permanent effect the pecuniary loss involved.'" *Id.* (quoting *Corman v. WEG Dial Tel., Inc.*, 402 P.2d 112, 115 (Kan. 1965)).

### B.      Analysis

The court addresses the settlement proceed distribution in the order that Kan. Stat. Ann. § 60-1905 presents them.

#### i.      Costs

Kan. Stat. Ann. § 60-1905 allows the court to award counsel the reasonable costs incurred during the litigation. *Newton v. Amhof Trucking, Inc.*, 385 F. Supp. 2d 1103, 1108–09 (D. Kan. 2004). Here, Depew, Gillen, Rathbun and McInteer, LC represents that it expended costs retaining experts, conducting depositions, filing this action, and mediating with defendant. The court has reviewed the costs presented at the hearing in Ex. 3 and finds that they are reasonable. The court thus deducts 4.9% of the wrongful death settlement proceeds to compensate reasonable costs incurred by plaintiff's counsel.

#### ii.      Attorneys' Fees

Kan. Stat. Ann. § 60-1905 "requires the district court to determine a reasonable fee for the plaintiffs' attorneys in a wrongful death case." *Baugh v. Baugh ex rel. Smith*, 973 P.2d 202, 207 (Kan. Ct. App. 1999). "The general rule is that an attorney is entitled to the reasonable value of services performed for the client." *Id.* When deciding whether a requested fee is reasonable,

the court considers the factors set forth in Kansas Rule of Professional Conduct 1.5(a).  *Id.*  Those factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

Kan. Rules. Pro. Conduct 1.5(a).

Plaintiff's counsel seeks an award of attorneys' fees representing 35% of the gross recovery.[3]  This is the percentage specified in the contingency fee agreement counsel reached with plaintiff.  After reviewing the record and testimony, the court concludes that the factors favor a finding that counsel's fee request is a reasonable one.  The court's experience with similar cases reveals that a 35% fee arrangement is a fee sometimes charged in this locality.  Our court has approved attorneys' fees of one-third of the settlement proceeds as reasonable in other cases apportioning wrongful death proceeds under Kan. Stat. Ann. § 60-1905.[4]  The fee request here is slightly higher, but not unreasonably so.  Moreover, granting this request "honors an agreement bargained for by competent adults."  *Roth v. Builder's Stone & Masonry, Inc.*, No. 19-2747-DDC-GEB, 2020 WL 7633973, at *3 (D. Kan. Dec. 22, 2020) (approving fee request under

---

[3] Alexander Mitchell, II and Mr. Rathbun have a referral agreement that Mr. Mitchell will receive 20% of the attorneys' fees requested by Mr. Rathbun.  Ex. 3.

[4] *See, e.g.*, *Newton*, 385 F. Supp. 2d at 1108 (finding that a 25% contingency fee award was reasonable, and indeed lower, than what often is charged in a personal injury case); *Sedlock v. Overland Park Med. Invs., LLC*, No. 19-2614-DDC, 2021 WL 1056516, at *5 (D. Kan. Mar. 19, 2021) (finding that the attorneys' 40% contingency fee was reasonable in a wrongful death action); *Turman*, 125 F. Supp. 2d at 448 ("[I]n [the court's] experience . . . a one-third contingency fee is not uncommon in wrongful death actions[.]").

Kan. Stat. Ann. § 60-1905).  The court thus concludes the 35% attorneys' fee award contemplated by plaintiff's contingent fee agreement is a reasonable fee arrangement in this case.

In sum, the court finds that the standards adopted in this rule favor approving the fee request of plaintiff's counsel.  The court thus finds that counsel's fee request here is a reasonable one for this wrongful death case.  The court approves plaintiff's fee request in the amount shown by Ex. 3.

### iii. Apportionment of Settlement

Last, the court considers how to apportion the remaining wrongful death settlement proceeds.  Plaintiff asked the court to apportion 61.8% of the settlement proceeds allocated to the heirs of the decedent as follows:  (1) 100% to Andrea Tatom as a surviving heir (or 61.8% of the total settlement), and (2) each of Ms. Glaves's sons will receive no part of the heir apportionment.

At the hearing, the court heard testimony from one witness, Andrea Tatom.  During her testimony, Ms. Tatom confirmed how she had served as her mother's sole caretaker after Ms. Glaves's mental decline.  Ms. Tatom explained how she arrived at the decision to move Ms. Glaves to Mapleton, where her mother ultimately sustained injuries while in defendant's care.

Ms. Tatom confirmed that she hired Depew, Gillen, Rathbun and McInteer, LC to prosecute this case, and that she understands the attorneys spent time investigating and preparing the case both before and after they filed the lawsuit.  Ms. Tatom also confirmed that she is satisfied with the work the attorneys performed, and that she fully understands the risks and benefits of settling this case.  She confirmed that she understands that, after attorneys' fees and expenses are paid, Ms. Glaves's heirs will receive 61.8% of the settlement.  She confirmed she understands that, of the settlement amounts apportioned to the heirs, she will receive 100% of

that amount (or 61.8% of the total settlement), and each of Ms. Glaves's sons will receive no part of the heir apportionment. She testified that she believes the apportionment is fair and reasonable, that the three other heirs are aware of the settlement and each one approves of it, and that her counsel has reviewed the settlement agreement with her.[5]

After considering the evidence at the hearing, the court concludes the proposed apportionment to Ms. Glaves's heirs is appropriate.

IV. Conclusion

The court grants plaintiff's Motion for Apportionment and Disbursement (Doc. 106) and apportions the settlement as follows:

| | |
|---|---|
| **Gross Settlement Proceeds** | **100%** |
| **Reduction to pay approved costs** | **4.9%** |
| **Attorney fee award (as approved in this Order)** | **33.2%** |
| **Andrea Tatom** | **61.8%** |

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Seal or Redact (Doc. 108) is partially granted and partially denied. The court directs the Clerk of the Court to remove the provisional designation from docket entry 106 and leave Docs. 106, 106-1, 106-2, and 106-3 under seal. The court has reviewed defendant's proposed redactions and directs defendant to refile the documents in Docs. 106, 106-1, 106-2, and 106-3, redacting from them only the passages that refer to the raw dollar amount of the settlement and any dollar amount expressed as a fraction of the settlement. The court does not permit defendant to redact

---

[5] Harley Glaves approved the settlement and apportionment via email. Doc. 106-2. Shawn Glaves approved the settlement and apportionment by text message. *Id.* At the August 14, 2023 hearing, both Ms. Tatom and Mr. Rathbun testified that Melvin Glaves orally approved the settlement and apportionment during an earlier phone conversation. Also, plaintiff's counsel established he had given all three of these heirs-at-law notice of the settlement approval hearing. None of them appeared at the hearing.

information referencing the fact of settlement, costs, or attorneys' fees.  Also, the court does not permit defendant to make any other redactions.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion for Order of Apportionment and Disbursement (Doc. 106) is granted.  The court approves counsel's cost and fee request and apportions the wrongful death settlement proceeds in the fashion described by this Memorandum and Order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Clerk of the Court close the case and term defendant's pending Motions to Exclude (Docs. 91, 92) as moot.

**IT IS SO ORDERED.**

**Dated this 22nd day of August, 2023, at Kansas City, Kansas.**

                                                        <u>s/ Daniel D. Crabtree</u>
                                                        **Daniel D. Crabtree**
                                                        **United States District Judge**